In the Matter of Ernest W. MOUNTJOY, Bankrupt.

John A. ROBINSON and Marjorie L. Robinson, Petitioners,

v.

Ernest W. MOUNTJOY, Bankrupt.

No. 3260.

United States District Court, W. D. Missouri, W. D.

Oct. 31, 1973.

Howard W. Bevins, Raytown, Mo., for bankrupt.

Jack N. Bohm, Thomas E. Thompson, Kansas City, Mo., for petitioners.

AMENDED [1] ORDER DENYING BANKRUPT'S PETITION FOR REVIEW AND AFFIRMING ORDERS OF REFEREE IN BANKRUPTCY OF JANUARY 12, 1973, VACATING PERMANENT INJUNCTION AND OVERRULING BANKRUPT'S MOTION TO DISMISS CREDITORS ROBINSONS' APPLICATION TO DETERMINE DISCHARGEABILITY WITHOUT PREJUDICE, AND OF JANUARY 31, 1973, DENYING BANKRUPT'S PETITION FOR RECONSIDERATION.

WILLIAM H. BECKER, Chief Judge.

This cause comes before this Court on the bankrupt's petition for review filed herein on February 20, 1973,[1a] pursuant to Section 39c. of the Bankruptcy Act. Although the petition herein is apparently untimely in that it was formally filed beyond the expiration period which ended on February 10, 1973,[2]

1. This Court entered its order in this cause on September 28, 1973. The findings and conclusions on which that order was based had not been formally typed and they were presented in a supplemental memorandum and order entered on October 2, 1973. The above orders were entered in draft form to avoid any possible problems which might result from the application of the new Bankruptcy Rules adopted April 24, 1973, and effective October 1, 1973.

1a. The petition for review was filed with the Civil Clerk's Office on February 20, 1973, then forwarded to the Bankruptcy Office and filed therein on February 21, 1973.

2. Section 39c of the Bankruptcy Act provides that "[a] person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time . . . file with the referee a petition for review of such order . . . ." Lo-

it appears that bankrupt actually attempted to file the petition on February 9, 1973.[3] This Court has been telephonically informed by counsel for bankrupt that said petition and the required filing fee were left with the Clerk of the Bankruptcy Court here in Kansas City, Missouri, on February 9, 1973, but that the petition was inadvertently filed on February 20, 1973.[4] In light of this inadvertent late filing which does not appear to be the fault of the bankrupt, this Court will construe bankrupt's petition as timely filed.[5]

In his petition herein, bankrupt seeks to review and attain reversal of orders of the Referee in Bankruptcy entered on January 12, and January 31, 1973. In the order of January 12, 1973, the Referee ordered that a permanent injunction issued May 12, 1972, be vacated insofar as it pertained to John A. Robinson and Majorie L. Robinson, creditors of the bankrupt. Said order of January 12, 1973, further overruled the bankrupt's motion to dismiss Robinsons' application to determine dischargeability without prejudice. The effect of this was to allow the Robinsons to proceed in the State Circuit Court in the case of Robinson v. Mountjoy, et al., Civil Action No. 724,864. This latter suit had been pending in the Circuit Court of Missouri, 16th Judicial Circuit, Division Two, since April 11, 1969.[6] In the order

---

cal Bankruptcy Rule 8 provides that "[t]he filing·of a petition for reconsideration operates to enlarge the time for the filing of a petition for review of the order involved to the tenth day following a denial of the petition for reconsideration. . . ." In the case ·at bar, the order at issue was entered on January 12, 1973, and under Section 39c, the time for filing would normally expire ten days later. However, on January 19, 1973, the bankrupt timely filed a petition for reconsideration of the order of January 12, 1973. The said petition was denied on January 31, 1973. Therefore, under Local Rule 8, the expiration period for timely filing a petition for review ended on February 10, 1973, having been extended by the intervention of the petition for reconsideration and ruling thereon.

3. Bankrupt's petition for review indicates that a copy of the same was served on counsel for the Robinsons on February 9, 1973. To this same effect is a letter dated February 16, 1973, from the Deputy Clerk of the United States District Court, Central Division at Jefferson City to counsel for bankrupt. In his letter Mr. Sheley, the Deputy Clerk, noted that the "Petition for Review ·. . . was filed with the Bankruptcy Clerk in Kansas City on February 9th." He further notes that "[i]t was my understanding that this case was transferred from Jefferson City to Kansas City in June of last year, but in any event, the papers and filing fee are enclosed."

4. This case was transferred from the Central Division of the Western District of Missouri (Jefferson City) to the Western Division of the Western District of Missouri on May 12, 1972. In light of this and other events, it would appear that the petition for review was sent to Jefferson City (see letter from Mr. Sheley as noted above) for filing on the mistaken impression that the case was still in the Central Division. Upon arriving at Jefferson City, the petition was then forwarded back to Kansas City to the Civil Clerk's Office where it was filed on February 20, 1973. The petition was then forwarded to the Bankruptcy Clerk and filed there (as required) on February 21, 1973.

5. Prior to 1960 federal district courts had the power to exercise independent discretion in entertaining "out-of-time" petitions for review. Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942). Congress amended the provisions of Sections 39c in 1960 to state that "[u]nless the person aggrieved shall petition for review of such order within such ten-day period or any extension thereof, *the order of the referee shall become final.*" (Emphasis added.) In so doing, Congress effectively overruled the holding of *Pfister*, thereby denying any inherent discretionary power to district judges to grant a petition for review after the ten-day period or any request for an extension made thereafter. *See, e. g.,* In re Watkins, 197 F.Supp. 500 (W.D.Va. 1961). Thus, although this Court would have no inherent discretionary power to consider the petition herein had the presentation thereof to the Bankruptcy Office been after February 10, 1973, the circumstances of the (technical) late filing herein are such that the bankrupt should not be penalized for inadvertent errors that were apparently not precipitated by the bankrupt's counsel.

6. On April 11, 1969, creditors John A. Robinson and Marjorie Robinson, husband and wife, filed an action in the Jackson County Circuit Court against the bankrupt, his wife,

of January 31, 1973, the Referee denied the bankrupt's petition of January 19, 1973, to reconsider the Referee's order of January 12, 1973.

On May 4, 1973, pursuant to Local Rule 29, the parties herein filed the General Order 47 Stipulation therein agreeing and stating that no additional evidence is to be offered before this Court by any party and that this petition for review is submitted to this Court solely upon the evidence adduced before the Referee. The parties further state that this cause is submitted on the same briefs heretofore presented to the Referee on the issues presented herein and that supplemental briefs will not be filed.

In order to clarify the matters herein for consideration, a brief chronological summary of the record is presented.

On April 11, 1969, creditors Robinson initiated a civil suit against the bankrupt, Ernest W. Mountjoy and his wife, Mary Mountjoy, and a corporation, Riverside Concrete, Incorporated, in the Circuit Court of Missouri, 16th Judicial Circuit, Division Two, therein alleging that in respect to the bankrupt, said party, as stockholder and an officer of said corporation, did engage in fraud, embezzlement, misappropriation, and defalcation while acting as an officer of said corporation and in a fiduciary capacity, and did willfully and maliciously convert the property of these creditors.

Bankrupt filed his voluntary petition for bankruptcy herein and was adjudicated a bankrupt on April 12, 1972, some three years after the filing of the State Court action described above.

On April 26, 1972, the last day for filing applications to determine dischargeability under Section 17c(2) [7] was fixed at June 14, 1972, pursuant to paragraph (1) of subdivision b of Section 14 of the Bankruptcy Act.

On May 17, 1972, the Court, on its own initiative,[8] extended the time [9] for filing applications under Section 17c(2) until September 14, 1972, in light of certain testimony at the first meeting of creditors. Mr. Howard Bevin, counsel for bankrupt, was mailed a copy of the order of extension.

On July 11, 1972, creditors Robinson *timely* filed their Section 17c(2) application to have the debt due them declared not discharged under subdivision a of Section 17.

Discovery procedures were commenced and on November 20, 1972, an order on pretrial procedures was entered setting the creditors' application for trial on December 20, 1972.

At a pretrial conference held in the Referee's chambers on December 18, 1972, all counsel being present, an extension of time for additional motions and suggestions was granted.

On December 29, 1972, creditors Robinson filed a motion for a jury trial and on the same date filed their motion to dissolve the original injunction together with suggestions in support thereof.

On January 10, 1973, the bankrupt filed his motion to dismiss the Robinsons' application to determine discharge-

---

and two corporations for fraud, embezzlement, misappropriation, defalcation, and willful and malicious conversion of property of these creditors. By memorandum of July 17, 1973, to the undersigned, Chief Referee Barker states that he has been " . . . advised by counsel that the Circuit jury return a verdict in favor of Dr. and Mrs. Robinson and against the bankrupt and his wife for $83,000 actual damages plus $75,000 punitive damages on July 16, 1973."

7. Section 17c(2) pertinently provides that "[a] creditor who contends that his debt is not discharged under clause (2), (4), or (8)

of subdivision (a) of this section *must* file an application for a determination of dischargeability *within the time fixed by the court* pursuant to paragraph (1) of subdivision b of section 14 of this Act and, unless an application is timely filed, the debt shall be discharged." (Emphasis added.)

8. Section 14b(1) of the Bankruptcy Act provides in part, that "[t]he court may, *upon its own motion* or, for cause shown, upon motion of any party in interest, *extend the time or times for filing* such objections or application." (Emphasis added.)

9. See Footnote 8, *supra*.

ability alleging that the application "was untimely filed." On this same date, bankrupt filed his suggestions in opposition to the creditors' motion to dissolve the injunction order.

On January 12, 1973, the Court entered an order vacating the permanent injunction issued May 12, 1972, in this cause insofar as said order pertained to creditors Robinson. The order of January 12, 1973, also overruled the bankrupt's motion to dismiss the Robinsons' application to determine dischargeability without prejudice. The effect of the order was to allow the Robinsons to proceed in the State Court in the matter of Robinson v. Mountjoy, et al., Civil Action No. 724,864, then pending in the Jackson County Circuit Court.[10]

On January 19, 1973, the bankrupt timely filed his petition for reconsideration of the Referee's order of January 12, 1973.[11] On January 23, 1973, bankrupt filed his suggestions in support of his petition for reconsideration. On this same date, bankrupt also filed a "Motion for Order of Discharge" including therewith suggestion in support thereof.[12] On January 31, 1973, said petition for reconsideration was denied by the Referee on the basis that no new evidence or applicable law had been presented to warrant ruling otherwise.

On February 20, 1973,[13] bankrupt filed herein his petition for review [14] of the Referee's order of January 12, 1973. Creditors Robinson filed their respective answer thereto on March 2, 1973.

In his petition herein for review of the Referee's orders of January 12 and January 19, 1973, the bankrupt makes the following contentions:

"That Bankrupt, your petitioner herein, is aggrieved by the said order of January 12, 1973 and January 31, 1973, in that said orders are arbitrary

and capricious, based upon no evidence or inadequate evidence, exceeded the jurisdiction of said Referee and are in contravention of the rights and protections afforded to Bankrupt by the Bankruptcy Act, in that:

"(a) Said Referee erred in denying Bankrupt's Motion to Dismiss the Application of Petitioners Robinson to Determine the Dischargeability of Bankrupt's indebtedness to them.

"(b) Said Motion to Dismiss must as a matter of law have been granted by Referee by reason of the fact that the Application of Petitioners Robinson to Determine Dischargeability was untimely filed.

"(c) Said Referee erred in permitting creditors, Robinson, to pursue their pending action in the state court of Missouri for an accounting, replevin, conversion, and fraud.

"(d) That as a matter of law, creditors Robinson are prohibited from pursuing in state court, an action of the type now pending against Bankrupt for the reason that this Court has exclusive jurisdiction over Bankrupt and said creditors and said jurisdiction is non-delegable.

"(e) That the finding by Referee in his Order of January 12, 1973, that 'good cause exists to allow plaintiff to proceed in the state court for determination of the liability, if any, of the bankrupt' was arbitrary and capricious in that no hearing was conducted by said Referee, nor was any evidence introduced to determine the issue of 'good cause'.

"(f) That said finding was erroneous in that a determination of liability at this time is irrelevant and

---

10. See Footnote 6, *supra*.

11. See Footnote 2, *supra* and Local Bankruptcy Rule 8 for the Western District of Missouri.

12. This motion has not been ruled on by the Referee.

13. See Footnotes 1 and 4, *supra*.

14. In respect to the timeliness of the petition and the power of this Court to consider said petition, see Footnotes 2, 3, 4, and 5, *supra*.

moot as bankrupt is now entitled as a matter of law, to a discharge in bankruptcy, discharging all liabilities to creditors, including indebtedness to creditors Robinson, excepting only those type liabilities set forth in Section 17(a)(2) of the Bankruptcy Act, properly pleaded and timely filed.

"(g) That said Referee has no jurisdiction to order a determination of liability, his sole jurisdiction under the Bankruptcy Act being to determine dischargeability.

"(h) That said order of the Referee was in direct violation of Section 17 of the Bankruptcy Act.

"(i) That said Referee erred in failing and refusing to order Bankrupt's. discharge in Bankruptcy on the expiration of 90 days following the first date set for the First Meeting of Creditors since no objections to bankrupt's discharge have been filed by any creditors.

"(j) That the Referee erred in failing and refusing to order Bankrupt's discharge in bankruptcy upon the expiration of ninety (90) days after May 12, 1972, the first date set for the First Meeting of Creditors.

"(k) That Bankrupt's discharge in bankruptcy is, as a matter of law, mandatory after the expiration of the statutory period provided in Section 14(b)(1) and (b)(2) (Title 11, U.S.C. Sec. 32(b)(1) and 32(b)(2)) and the Referee's order requiring Bankrupt to defend state court actions of accounting and replevin constitutes a denial of a discharge to Bankrupt and 'exceeds the Referee's jurisdiction.

"(l) That the Referee erred in overruling Bankrupt's Motion to Dismiss the Application of creditors Robinson to Determine Dischargeability for the reason that said Application, upon its face, fails to state facts sufficient to entitle said

creditors to relief under Section 17 of the Bankruptcy Act.

"(m) That the Referee erred in remanding Bankrupt to trial in state court in that the determination of dischargeability of debts under the provisions of Section 17(c)(2) and 17(a)(4) is mandatory upon the Referee and said Referee exceeded his jurisdiction by refusing to make said determinations and by dissolving the restraining order which prohibited actions in state courts against Bankrupt."

■ Bankrupt's contention that the Referee erred in denying bankrupt's motion to dismiss the application of creditors Robinson to determine dischargeability is without merit. The Robinsons' application, as filed herein on July 11, 1972, states that a suit was brought against the bankrupt and others for fraud, embezzlement, misappropriation, defalcation and willful and malicious conversion of property of these creditors. These allegations fall within that category of liabilities under Section 17a which, if established, would not be released by a discharge in bankruptcy. The Robinsons' claims, as presented, specifically fall within the provisions of Section 17a(2) and (4) which pertinently provides as follows:

"That a discharge in bankruptcy shall not release or affect any tax lien; are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension of renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another; . . . (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity; . . .."

Although the Referee has not yet decided whether the creditors' claims should be held nondischargeable, the creditors' application, on its face, sufficiently states claims that, if established, would entitle the creditors to have said claims exempt from discharge. Furthermore, the granting of bankrupt's motion would have been in error for such action, based on the record, would have been arbitrary and would have barred the creditors from ever having the opportunity to even establish that their claims are exempt from discharge. It should further be noted that a dismissal of their application would have caused their claims to be automatically discharged.

Bankrupt also contends that the motion to dismiss the application should have been granted "as a matter of law" for the reason that the creditors' application to determine dischargeability was untimely. This contention is without merit. The record establishes that on April 26, 1972, the last day for filing applications under Section 17c(2) was fixed at June 14, 1972, pursuant to paragraph (1) of subdivision b of Section 14. Then on May 17, 1972, the Court on its own initiative, timely *extended* the time for filing applications until September 14, 1972, on the basis of testimony at the first meeting of creditors. This extension by the Court was made pursuant to the provisions of Section 14b(1) which provides, in part, that "[t]he court may, *upon its own motion* . . . extend the time or times for filing such objections or applications."[15] (Emphasis added.) On July 11, 1972, creditors Robinson filed their timely application, well in advance of the expiration date of September 14, 1972.

In respect to the Referee's orders of January 12 and January 31, 1973, bankrupt's major opposition to said orders goes to the Referee's allowance of the creditors to proceed in the State Court proceedings against the bankrupt. Bankrupt alleges that this allowance was "arbitrary and capricious" and beyond

the "jurisdiction" of the Referee under Section 17 of the Bankruptcy Act. Bankrupt misconstrues the provisions of Section 17 and his contentions in respect thereto are without merit.

Bankrupt's contentions respecting the jurisdiction of the Referee under Section 17 apparently stem from bankrupt's view of the effect of the 1970 amendments to Section 17 of the Bankruptcy Act. These changes were made after several unsuccessful attempts by Congress to bring the matter of dischargeability of particular debts within the forum of the bankruptcy court. *See,* S. Rep. No. 91–1173, H.Rep.No. 91–1502, on S. 4247, 91st Cong., 2d Sess. (1970). In 1970, legislation was passed dividing the classes of nondischargeable debts listed in Section 17a into two categories. In the one, the bankruptcy court was given concurrent jurisdiction with local courts over the dischargeability of debts. *See,* 1A Collier, Bankruptcy ¶ 14.68, 1453 (14th ed. 1972). In the other category were debts claimed nondischargeable which fall within the exclusive jurisdiction of the bankruptcy court. This latter category encompasses those debts falling within the provisions of Section 17a(2), (4), or (8)—Section 17a(2) and (4) being involved herein. The reason for this legislation is explained as follows:

"As stated in the report on this measure by the Senate Judiciary Committee, the major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankrupty by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was

15. See Footnote 8, *supra.*

not properly served. As a result a default judgment is taken against him and his wages or property may again be subject to the garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.

"S. 4247 is meant to correct this abuse. Under it, the matter of dischargeability of the type of debts commonly giving rise to the problem; that is, those allegedly incurred as a result of loans based upon false financial statements, will be within the exclusive jurisdiction of the bankruptcy court. The creditor asserting nondischargeability will have to file a timely application in the absence of which the debt will be deemed discharged. H.R. 18871 provides that at the same time notice is given to creditors of the date by which objections to discharge must be filed, creditors are also notified of the date by which applications to determine nondischargeability of their debts must be filed. When timely filed, the matter will be heard in the bankruptcy court and final disposition made of it. The right to trial by jury as it presently exists is retained and the creditor's application does not subject him to the jurisdiction of the bankruptcy court for any other purpose." H.Rep.No.91–1502, 91st Cong., 2d Sess. 1–2 (1970) and S. Rep.No.91–1173, 91st Cong., 2d Sess. (1970) (reports of respective Committees on the Judiciary) as noted in 1A Collier, Bankruptcy ¶ 17.28A, 1735–1736 (14th ed. 1972).

■ With respect to any debts claimed to be excepted from discharge under the provisions of Section 17a(2), (4), or (8), a creditor must now file an application under Section 17c(2)[16] for a determination of dischargeability within the time fixed by the Court. And, unless an application is timely filed, the debt shall be discharged. Thus, the issue of dischargeability with respect to debts claimed as excepted under Section 17a(2), (4), or (8), is within the exclusive jurisdiction of the bankruptcy court and it must make the determination of *dischargeability*. *See*, 1A Collier, Bankruptcy, ¶¶ 14.68 and 17.28A [3] (14th ed. 1972). It must be noted however that dischargeability and provability are not to be confused. As noted in 1A Collier, Bankruptcy, ¶ 12.28A [3], at 1741 (14th ed. 1972), "[t]he thrust of § 17c(2) is to render it unnecessary for a bankrupt to defend a state court action *post* bankruptcy by raising the discharge as an affirmative defense in those cases which had caused the major abuses . . . ." (Emphasis added.)

■ The case at bar presents a situation wherein a state proceeding was pending three years prior to the filing of the petition in bankruptcy. This is totally different than the situation envisioned by the Congress in passing the 1970 legislation and the addition of subdivision c(2). This new provision was added to cure the abuse of creditors seeking and procuring default judgments in state court actions brought against *discharged* bankrupts who often failed to appear because of misplaced reliance or an inability to secure counsel. *See*, H.Rep.No.91–1502, 91st Cong., 2d Sess. 1–2 (1970) and S.Rep.No.91–1173, 91st Cong., 2d Sess. (1970) (reports of the respective committees on the Judiciary) as noted herein *supra* at pages 11 and 12.

In respect to this matter, the following statements at 1A Collier, Bankruptcy ¶ 1716, at 1650.1–1650.2 (14th ed. 1972) are to be noted:

" . . . The effect of the 1970 amendments is to give the bankruptcy court, *i. e.*, the referee in bankruptcy, exclusive jurisdiction over such actions. Any action commenced in state court on a debt asserted as nondischargeable under § 17a(2), prior to the bankruptcy proceeding, will be stayed by the bankruptcy court through enjoining the plaintiff-creditor and if he wants his claim held

---

16. See Footnote 7, *supra* for a full statement of that subdivision.

nondischargeable, he must file his application for such a determination in the bankruptcy court. Should he have proceeded to judgment in the state court prior to the bankruptcy proceeding, or during it in the absence of a stay, the enforcement of the judgment through any process will be enjoined, at least until the bankruptcy court has determined the debt to be nondischargeable.

"In such a situation an issue of collateral estoppel may appear involved, but, in fact, it is not. For example, if suit is brought prior to bankruptcy on the debt, and allegations of false financial statement and reliance are contained in the pleadings, and facts pertaining to those issues are presented during the course of the trial, the bankrupt will, nevertheless, be able to contest those very issues subsequently on the hearing of the creditor's application filed in the bankruptcy proceeding. Two points should be noted. Even if the creditor has obtained a prebankruptcy judgment, he must still file an application under § 17c(2) for a determination of the dischargeability of that debt and the application must be filed timely. Secondly, where all of the ingredients of § 17a(2) are pleaded and tried, and judgment is rendered or judgment by default is taken, the factual elements of § 17a(2) may be relitigated in the bankruptcy court. This result comes about because the judgment in the first suit was basically one on the debt, and that the debt existed in the specified amount, was unpaid, and is owing. In the bankruptcy court, the issue is whether the debt is discharged or rendered nondischargeable by § 17a(2), an issue not presented in the prior state court action and not capable of being raised. The issues in the two actions are different. As to the facts raised in the state court action, the particular ones pertaining to § 17a(2) of the Bankruptcy Act were not necessary to the judgment obtained, and not even relevant thereto. They be-

come relevant only on the issue of dischargeability of the debt in bankruptcy and have no bearing on whether or not one is indebted to another. In such case the authorities are in accord that the doctrine of collateral estoppel does not apply to bar the bankruptcy court from contesting those facts in the subsequent hearing in the bankruptcy court.

"A somewhat more difficult situation is presented when the prebankruptcy action is not on the debt, but is based on fraud and damages are sought. Assuming that judgment in that action is obtained, may the underlying facts be relitigated in the bankruptcy court on the question of dischargeability? Here the necessary facts under § 17a(2) are the basis for the prior judgment. It would appear that the bankrupt would be barred from raising those issues anew, at least by the majority view, but there is another consideration peculiarly applicable to bankruptcy procedings (sic). First of all, § 14f of the Bankruptcy Act provides that the order granting the discharge shall 'declare that any judgment theretofore . . . obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to . . . (c) debts determined to be discharged under paragraph (3) of subdivision c of section 17 of this Act.' The debt in question is one which was or which will be determined to be discharged or not discharged under § 17c(3) which is the paragraph providing for the hearing on the application filed pursuant to § 17c(2) or § 17c(1). Section 14f thus gives the court the authority to declare that any prebankruptcy judgment falling within its terms is null and void. The judgment in question is based on a liability that falls within the scope of § 17a(2). *When it reaches the bankruptcy court the issue is one of dischargeability and not one of liability.* While liability may have been adjudicated, the nondis-

chargeability of the liability has not been adjudicated. For the purposes of determining the dischargeability of the liability, the bankruptcy court should be able to base its findings of the state court. Furthermore, if the bankrupt were barred from relitigating those issues, the effect of the 1970 legislation of strengthening the discharge in bankruptcy would be greatly dissipated." (Emphasis added.)

This interpretation is also noted at 1A Collier, Bankruptcy ¶ 17.17 at 1666–1667 (14th ed. 1972) wherein the following is stated:

"Thus the application to determine the dischargeability of debts falling within § 17a(2), (4), and (8), must be filed within the time fixed, and § 14b(1) provides that the court shall fix a time for the filing of such applications which shall be not less than thirty days nor more than ninety days after the first date set for the first meeting of creditors. In fact, the same date as that set for the filing of objections to the discharge may be set for the applications. And there is no reason why the same notice cannot be used to inform creditors of the dates so fixed for both purposes which itself may be the notice of the first meeting of creditors.

"If the application required by § 17c(2) is not filed within the time fixed by the court pursuant to § 14b(1), the debt or liability for which it should have been filed is discharged. If it is so discharged, the creditor is thereafter barred from instituting suit on the liability, continuing any suit which may have been commenced prior to bankruptcy, or enforcing any judgment obtained before or after discharge. Any judgment theretofore rendered is null and void. Accordingly, if a judgment had been obtained for damages based upon willful and malicious conversion prior to bankruptcy, the judgment creditor nevertheless must still file the application required by § 17c(2). Should he

not, the judgment will be unenforceable.

"A question may arise in such a case where he does file the application as to whether the prior judgment is res judicata on the issue of willful and malicious conversion or whether the doctrine of collateral estoppel may apply during the hearing in the bankruptcy court on the application. The prebankruptcy judgment may have as its only essential basis a conversion. The willful and malicious nature of the conversion may not have been required as a basis for the judgment. If that is the case, collateral estoppel will not apply and, in the bankruptcy court, the bankrupt may contest the nondischargeable nature of the claim on the ground that the act was not willful or malicious. Res judicata will not apply because different issues are involved; *in the one case, the issue was liability; in the bankruptcy court, the issue is dischargeability.*" (Emphasis added.)

It is true that the 1970 legislation, in respect to debts claimed as excepted under Section 17a(2), (4), or (8), vested exclusive jurisdiction in the bankruptcy court to determine the issue of dischargeability in respect to such debts. In re Burns, 357 F.Supp. 176, 178 (D.Kan. 1971). However, this legislation did not divest the bankruptcy courts of the discretion, absent special and unusual circumstances, to refrain from ruling on the dischargeability of a specific claim then in issue in a state court proceeding. *See,* Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Copperstate Supply Company v. Fisher, 449 F.2d 760 (9th Cir. 1971); Martin v. Henley, 452 F.2d 295, 301 (9th Cir. 1971). Upon a judgment on the claim in the state court, the bankruptcy court can review the record, hear additional evidence if offered or desired, and then make a determination on the crucial issue of dischargeability. This procedure provides for greater savings in time, resources and expenses of

the courts and parties involved. *See,* Transport Indemnity Company v. Hofer Truck Sales, et al., 339 F.Supp. 247, 248 (D.Kan. 1971).

■ Thus, the action of the Referee in allowing the creditors to pursue their action in the State Court proceedings was within the sound discretion and jurisdiction of the Referee. Transport Indemnity Company v. Hofer Truck Sales et al., *supra.* Furthermore, said exercise of discretion, based on the record herein, was not arbitrary and capricious nor clearly erroneous, Equitable Life Assurance Society v. Deutschle, 132 F.2d 525 (8th Cir. 1942), and it did not constitute a delegation of exclusive jurisdiction as contended by bankrupt. See discussion of jurisdiction in regard to Section 17, *supra.*

■ In the order of January 12, 1973, the Referee ordered that the permanent injunction issued May 12, 1972, be vacated insofar as it pertained to creditors Robinson. Bankrupt contends that this was beyond the jurisdiction of the Referee. This contention is also without merit.

The permanent injunction order of May 12, 1972, was issued pursuant to Section 17c(4) which vests the Referee with the discretionary power to issue injunctions. The language of Section 17c(4) provides, in part, that " . . . any party *may* be enjoined from instituting or continuing such action prior to or during the pendency of a proceeding to determine its dischargeability under this subdivision c." (Emphasis added.) It is clearly established that a referee, once having made an order, has the power to reconsider and amend or vacate it. In re Pottasch Bros. Co., Inc., 79 F. 2d 613 (2nd Cir. 1937), 101 A.L.R. 1182; La Barbera v. Grubard, 112 F.2d 738 (2nd Cir. 1940); In re Clark, 257 F.Supp. 761 (E.D.Va. 1966); 2 Collier, Bankruptcy ¶ 38.09[3], 1434–1435 (14th ed. 1972). Thus, the Referee herein had the power to vacate the injunctive order and bankrupt has presented no additional facts or legal contentions which

would establish any error in or abuse of this exercise of power.

■ Bankrupt further contends that he is entitled to a discharge "as a matter of law" and that requiring bankrupt to defend the State Court action constitutes a denial of a right to discharge. Although it is to be noted that no objections appear to have been filed in respect to the bankrupt's application for discharge, it is further noted that it is occasionally appropriate to withhold temporarily or to postpone a discharge pending further pleadings or a state proceeding then in progress. 1A Collier, Bankruptcy ¶¶ 14.64 and 16.06 (14th ed. 1972) and cases cited therein.

■ However, the question of discharge was presented to the Referee on January 23, 1973, by a "Motion for Order of Discharge" with suggestions in support thereof. The record presented to this Court does not show that said motion was ruled upon. Nor does it appear that the issue was fully developed. Because bankrupt's petition states that review is sought of the Referee's orders of January 12, 1973, and January 31, 1973, neither of which encompasses bankrupt's motion of January 23, 1973, this Court deems that bankrupt's contentions respecting an alleged denial of a right to discharge are not ripe for consideration in that the record does not establish that the motion of January 23, 1973, was formally ruled upon and thus no reviewable order on this issue is presented to this Court pursuant to Section 39c. Therefore, this issue will not be the subject of consideration by this Court, but will be left to the Referee for ruling upon further development of the issue by the submission of pleadings and arguments if needed and so desired.

Bankrupt has failed to present to this Court any additional facts or legal contentions which would justify disapproval of the decisions of the Referee in Respect to his orders of January 12, 1973, and January 31, 1973.

Upon a full review of the respective briefs presented herein in regard to the

issues raised, it is hereby concluded that the orders of the Referee in Bankruptcy in question are not in contravention of the rights and protections afforded the bankrupt under the Bankruptcy Act. Furthermore, these orders were within the jurisdiction of the Referee, were not beyond the scope of Section 17 of the Bankruptcy Act, and were not arbitrary and capricious. The referee did not err in denying bankrupt's motion to dismiss the application of creditors Robinson to determine dischargeability without prejudice. The referee did not err in vacating the permanent injunction issued May 12, 1972, insofar as it pertained to creditors Robinson. The Referee did not err in allowing the Robinsons to proceed in the State Court proceeding against the bankrupt.[17] Further, the Referee did not err in denying bankrupt's petition of January 19, 1973, to reconsider the order of January 12, 1973.

For the foregoing reasons, it is therefore

ORDERED that bankrupt's petition for review of the Referee's orders of January 12, 1973, and January 31, 1973, be, and it is hereby, denied. It is further

ORDERED that the Referee's order of January 17, 1973, vacating permanent injunction and overruling bankrupt's motion to dismiss creditors Robinsons' application to determine dischargeability without prejudice, be, and it is herehereby, affirmed. It is further

ORDERED that the Referee's order of January 31, 1973, denying bankrupt's petition to reconsider the Referee's order of January 12, 1973, be, and it is hereby, affirmed. It is further

ORDERED that the orders entered in this cause on September 28, 1973, and the supplemental memorandum and order entered on October 2, 1973, be, and they are hereby, vacated. It is further

ORDERED that the Referee in Bankruptcy be, and he is hereby, authorized to proceed with the processing of the above-entitled action to final termination.

---

17. Should the State Court action result in no liability against the bankrupt, the issue of dischargeability in respect to the Robinsons' debts becomes moot. If the State Court finds liability against the bankrupt without a specific finding of fraud or conversion, the issue of dischargeability also becomes moot in the bankruptcy court. If the State Court action results in a finding based on fraud and conversion, the issue of dischargeability must then be decided and the findings of the State Court will be given due weight and consideration as discussed herein, *supra* at pages 1094 to 1096.