Chief Judge Breitel.
Plaintiff Chevron Oil Company seeks recovery totaling $27,047.11 from defendant Edward H. Dobie as guarantor of obligations incurred by the purchase of Chevron’s products by two corporations operating service stations. Dobie asserts his personal discharge in bankruptcy as a defense, but Chevron argues that the discharge was inapplicable because of inadequate scheduling of the guarantees running in favor of Chevron and lack of proper notice to Chevron of the bankruptcy proceeding. Special Term granted summary judgment to defendant guarantor, and the Appellate Division affirmed.
There are two issues. The first is whether failure to specify the contingent nature of an obligation, combined with a gross understatement of the amount of the contingent obligation, prevents an otherwise correctly listed debt from being "duly scheduled” for purposes of section 17 of the Bankruptcy Act (US Code, tit 11, § 35, subd [a], par [3]). The second, subsidiary, issue concerns the effect of a discharge in bankruptcy on a written guarantee of present and future obligations.
There should be an affirmance. Paragraph (3) of subdivision (a) of section 17 of the Bankruptcy Act is not intended to punish debtors for failure to comply with the scheduling *714 formalities set forth in section 7 of the act.(US Code, tit 11, § 25, subd [a], par [8]). The "due scheduling” requirement is intended only to assure that a debt is not discharged unless the schedule provides enough information about the creditor to allow the bankruptcy clerk to send properly addressed notice of the proceedings to that creditor. Since the schedule accurately listed "Chevron Oil Co., Perth Amboy, New Jersey” as a creditor, Chevron may not assert that the debts in issue were not "duly scheduled”. Moreover, Dobie’s discharge eliminated Chevron’s right to enforce Dobie’s agreements to guarantee corporate obligations, and Chevron is thus barred from recovery on obligations incurred after, as well as before, discharge.
On May 1, 1969, Chevron entered into agreements with Ed-Nor Associates, Inc., a close corporation in which presumably Dobie had some direct or indirect interest, under which Ed-Nor would, in essence, lease and operate a Chevron service station. On September 1, 1969, Chevron entered into similar agreements with Anciad Corp., a similar close corporation. In each case, Dobie signed the agreement on behalf of the lessee corporation, and in each case, Dobie individually guaranteed payment of charges to become due Chevron. The guarantees were to "remain in full force and effect until written notice of termination shall be delivered”.
On October 7, 1970, Dobie filed a voluntary petition in bankruptcy. The required schedule of creditors listed "Chevron Oil Co., Perth Amboy, New Jersey 1969 Mdse 100.00”. There was no mention of Anciad, Ed-Nor, or the contingent nature of the obligation. The two corporations then owed Chevron more than $10,000 for merchandise sold and delivered.
Notice of the first meeting of creditors and order fixing the last day for filing objections to discharge was mailed to Chevron, and to other creditors, on October 16, 1970. Chevron asserts that it has no record of receipt of the notice, but acknowledges that, since its accounts are listed only by name of principal debtor, receipt of a notice bearing only Dobie’s name and not those of Anciad and Ed-Nor could have caused confusion in filing.
At the outset, a State court has an inescapable obligation to interpret and apply the Federal statute. Indeed, prior to the 1970 amendments to section 17, the Federal Bankruptcy Court did not have jurisdiction of cases like this; Federal courts, *715 other than the Supreme Court, could pass on the effect of a discharge only if there were an independent basis for Federal jurisdiction (see 1A Collier, Bankruptcy, par 17.28). Even after the 1970 amendments, a State court remains an appropriate forum for determining the effect of a discharge, with three exceptions. Only when these exceptions, which deal with liabilities for fraud, obtaining money by false pretenses, and willful and malicious injuries, are at issue does the Bankruptcy Court have exclusive jurisidiction (Bankruptcy Act, § 17, subd [c], pars [1], [2]; US Code, tit 11, § 35, subd [c], pars [1], [2]; 1A Collier, Bankruptcy, pars 17.23[9], 17.22A). None of the exceptions is involved in this case.
Section 17 provides, in relevant part, that "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy”. Any reading of the plain words of the statute points to the simple rule invoked: if the debt is "duly” scheduled or if the creditor knows his debtor is in bankruptcy proceedings, a subsequent discharge is effective to discharge the debt or debts owed by the particular debtor. Put another way, a discharge is effective unless there be neither "due scheduling” nor "notice or actual knowledge” of the bankruptcy proceedings (see, e.g., Villar & Co. v Conde, 30 F2d 588, 589; United States v Scheiner, 308 F Supp 1315, 1318; Edwards Co. v Long Is. Trust Co., 75 Misc 2d 739, 741-742; Sline v Layden, 91 SW2d 983, 983-984 [Tex]; cf. Hill v Smith, 260 US 592, 595). Thus, once a debt has been duly scheduled, failure to receive the notice from the bankruptcy clerk, even if such failure of receipt be conclusively established, does not exempt the debt from discharge (see Matter of Zinn v Hallock, 194 Misc 604 [Hofstadter, J.], affd 275 App Div 818; Tamborella v Robison, 245 So 2d 476 [La]).
The due scheduling provision in section 17, which was first enacted as part of the Bankruptcy Act of 1898, was designed to avoid the injustice inherent in previous bankruptcy legislation which allowed a debt to be discharged without any notice at all to the creditor (Tyrrel v Hammerstein, 33 Misc 505, 506-507, and cases cited; Broadway Trust Co. v Manheim, 47 Misc 415, 417-418; 1A Collier, Bankruptcy, par 17.23 [1]). Conditioning discharge on the due scheduling of debts assures generally *716 that no debt will be discharged unless notice of the bankruptcy proceeding is mailed by the Bankruptcy Court to the creditor.
The procedure is simple. Pursuant to instructions of the bankruptcy referee, a clerk mails to each scheduled creditor a notice of the first meeting of creditors and order fixing the last day for filing objections to the discharge (see Official Bankruptcy Form 12). The creditor may then take appropriate action.
The Bankruptcy Act in effect presumes that once a creditor knows of a pending bankruptcy proceeding, the creditor will be able to identify any debts owed by the bankrupt, and will then take appropriate action. It assumes that the creditor knows his own debtors, how much they owe, and the nature of the debts. Thus, the statute provides that mere knowledge of the proceedings is a satisfactory alternative to due scheduling. There is no requirement that the creditor be made aware of any particular debt (see Blake v Alswager, 55 ND 776, 779; Molloy v Molloy, 43 Ohio App 49, 50-51; Commodore v Armour & Co., 201 Kan 412, 422).
It matters not that in today’s world a creditor might not always know his debtors, that large corporations like Chevron may have thousands of debtors, including credit card carrying consumers. The statute may have been written for another age, but its command is still the law. Even a creditor who has been perfectly scheduled will receive only the bankruptcy clerk’s notice of the bankruptcy proceedings, without any indication of the nature, contingency, or amount of the debt- or’s obligation. And because a creditor who has knowledge of the bankruptcy proceedings will be barred by a discharge, it is obvious that the data in scheduling a debt as to its nature, contingency, or amount is not material. Consequently, a debtor who has erred in scheduling is not penalized, provided always that he has, at least, taken care to ascertain, if necessary, and schedule the creditor’s correct name and address (cf. Miller v Guasti, 226 US 170). The mandated minimum in normal course will bring notice of the bankruptcy proceedings to the creditor. Thus, for example, in conformance with this analysis, it has been said that a mere discrepancy in amount of the debt scheduled will not affect the validity of a discharge (Molloy v Molloy, 43 Ohio App 49, 50-51, supra; Sline v Layden, 91 SW2d 983, 983-984 [Tex], supra; Koen & *717 Co. v Accardo, 188 So 2d 99, 100 [La]; Claflin v Wolff, 88 NJL 308, 316-318).
In this case, Chevron was scheduled, and its address was listed as "Perth Amboy, New Jersey”. Although much depends on the facts of each case, failure to include a street address in the schedule generally has not been held fatal to a bankrupt’s cause (Kreitlein v Ferger, 238 US 21, 30-34 ["Indianapolis” held sufficient]; Little Neck Investors v Kurzius, 88 NYS2d 707, 708, affd 275 App Div 1049, mot for rearg and mot for lv to app den 276 App Div 775 ["Little Neck, N.Y.”]; Schill & Co. v Larsen, 135 NJL 335, 337-338, affd 136 NJL 197 ["Irvington, New Jersey”]; but see Cagliostro v Indelli, 53 Misc 44 ["Mulberry street, New York City”]). Here, however, this court need not decide whether those holdings rest on an outmoded view of the efficiency of the postal service, for Chevron’s own invoices listed no street address. Certainly, Dobie was justified in relying on an address provided by the very creditor who now seeks to assert its insufficiency.
The debt here was "duly” scheduled. Hence, it was not excepted from discharge.
Chevron also contends that even if the discharge as to it be sustained, Dobie should remain liable as guarantor for debts incurred by Anciad and Ed-Nor after the date of discharge. Chevron contends that the agreement to guarantee future debts of Anciad and Ed-Nor survived the discharge in bankruptcy, and that only those debts already incurred by the two corporations at the time of Dobie’s bankruptcy were affected by the discharge. In statutory terms, the question is whether Dobie’s obligation to guarantee future loans was a "provable”, and therefore dischargeable, debt under sections 17 and 63 of the Bankruptcy Act.
The 1938 Bankruptcy Act explicitly made provable "contingent contractual liabilities” (§63, subd [a], cl [8]; . US Code, tit 11, § 103, subd [a], cl [8]). Even earlier, however, it was well established that a guarantee, as a debt founded upon "contract, express or implied”, is a provable debt, even if the principal’s default should not occur until after bankruptcy (§ 63, subd [a], cl [4]; US Code, tit 11, § 103, subd [a], cl [4]; Maynard v Elliott, 283 US 273; see, also, Edwards Co. v Long Is. Trust Co., 75 Misc 2d 739, 741-744, supra). Chevron seeks to distinguish the Maynard case on the ground that the "post-discharge debts” of Anciad and Ed-Nor did not themselves exist at the time of discharge. The distinction is not determi *718 native (see Associated Food Stores v Seigel, 20 Misc 2d 952, 953, mod on other issues 10 AD2d 1003, affd 9 NY2d 816). It was always within Chevron’s control to prevent Anciad and Ed-Nor from incurring new liability. Thus, the amount of Dobie’s liability was not "dependent upon an event so fortuitous as to make it uncertain whether liability will ever attach.” (Maynard v Elliott, supra, p 278.) Moreover, if Chevron’s argument be accepted, a guarantor of future obligations, deprived even of the refuge of bankruptcy proceedings, would forever be at the mercy of the principals to the transaction. This result would clearly be out of harmony with the objectives of the Bankruptcy Act (see pp 277-278). Hence, all of the obligations arising out of Dobie’s guarantee agreement must have been discharged.
The statutory provisions at issue in this case may appear unduly protective of the interests of careless bankrupts. In fact, they may be so. But it is also imperative to recognize that a truly diligent creditor, no matter how large and organizationally complex, is not hopelessly disadvantaged by the statute. Had Chevron included a street address on its invoices, notice would undoubtedly have been addressed there and probably received. Had Chevron kept some readily accessible record of Dobie’s obligation, the notice, if received, could have been properly filed by it. Had Chevron been more attentive to the financial difficulties of both its principal debtors and its guarantor, the postdischarge debts might not have been incurred at all. Chevron, however, did none of these things.
In any event, if creditors are to receive greater protection than they now have, or larger corporations assisted in more easily screening their mail, it will require congressional amendment to the statute. Indeed, that was the reason and the way the statute was amended in 1898, in order to provide scheduling and mailed notices for creditors. It is both persuasive and of interest that a proposed recasting of the Bankruptcy Act does not, in the respects relevant to the issues in this case, increase the protection to creditors (Report of the Commission on the Bankruptcy Laws of the United States, HR Doc No. 137, 93d Cong, 1st Sess, pt 2, § 4-506, subd [a], cl [4], at p 136).
Nevertheless, it should not pass without comment that Dobie could have and should have done better in scheduling the contingent obligation he owed Chevron. But he may not be denied the benefit of the Federal statute.
*719 Accordingly, the order of the Appellate Division should be affirmed, without costs.