**GUARANTY BANK, Appellant,**

v.

**LONE STAR LIFE INSURANCE COMPANY, Appellee.**

**No. 19549.**

Court of Civil Appeals of Texas, Dallas.

June 9, 1978.

Rehearing Denied July 13, 1978.

W. Ted Minick, Winstead, McGuire, Se-chrest, & Trimble, Dallas, for appellant.

T. Richard Handler, Jenkens & Gilchrist, Dallas, for appellee.

GUITTARD, Chief Justice.

Guaranty Bank sued Lone Star Life Insurance Company to enforce a commitment agreement in the form of a letter to make a loan to Omnia Systems, Inc. The bank alleges that it had made a short-term loan to Omnia in reliance on the commitment letter. Lone Star defended on the ground that the bank was neither a party to the commitment nor a third-party beneficiary entitled to enforce it and also on the ground that certain conditions to its obligation to make the loan had not been met. The trial court rendered summary judgment for defendant, and the bank appealed, contending that Lone Star has failed to show that no fact issues exist. We affirm on the ground that the summary-judgment proof establishes as a matter of law that one of the conditions of Lone Star's commitment had not been met, namely, the personal guaranty of the loan by Omnia's president, John Baird.

The summary-judgment proof shows that no dispute exists concerning the facts. Lone Star's commitment letter provides for a loan of $760,000 "to be made to Omnia Systems, Inc. (Borrower) or its assignee (Guaranty Bank, Dallas, Texas) and it is to be secured by two first-mortgage notes" on certain land in Florida. Among the "terms and conditions" specified is the following: "The loan shall be personally guaranteed by John B. Baird and Ralph Smith."

The bank contends that no personal guaranty was required as a condition to Lone Star's liability on its commitment agreement because, after the bank had advanced the funds to Omnia, Lone Star signed a later "clarification letter" directly promising to purchase the Omnia note from the bank. Alternatively, the bank contends that if this condition was applicable, it was satisfied because the bank tendered to Lone Star an assignment of a guaranty of the Omnia note by Baird and Smith, which was equivalent to a guaranty of the loan to Lone Star.

We conclude that neither of these contentions is correct. The clarification letter is addressed to the bank as well as to Omnia

and states that it is "written to clarify our Commitment Letter addressed to Omnia Systems, Inc." The clarification letter continues:

Paragraph six (6) of the Commitment Letter means:

*If all other conditions of the Commitment Letter have been met,* not prior to April 15, 1976 or later than September 30, 1976, the Lender will pay to Guaranty Bank the sum of $760,000.00 upon Guaranty Bank's tendering and delivering to Lender at its main office in Dallas, Texas the following:

(a) Promissory Note of Omnia Systems, Inc. to Guaranty Bank dated April 25, 1974, in the principal sum of $760,000.00 endorsed without recourse;

(b) The assignment of two First Mortgage Notes and the deeds securing same mentioned in the Commitment Letter, endorsed without recourse, . . .;

(c) Assignment to Lender by Guaranty Bank of its interest in the Mortgagee Policy . . .;

(d) The $50,000.00 or the Promissory Note in a like sum from Omnia Systems, Inc. guaranteed by John B. Baird and Ralph Smith . . . . [Emphasis added]

■ The bank argues that since Lone Star agrees in the clarification letter to pay the amount of the loan direct to the bank in exchange for endorsement and delivery to it of the Omnia note and the other documents listed, the various conditions specified in the original commitment agreement have no application to a situation in which the bank calls on Lone Star to purchase the existing Omnia note, as distinguished from a situation in which Omnia pays off the bank and calls on Lone Star to make a new loan under the terms of its commitment. We cannot accept this interpretation without disregarding the express language in the clarification letter, "If all other conditions of the Commitment Letter have been met . . . ." We find no evidence in the clarification letter of any intention that the conditions of the original commitment

should not apply in the event that the bank rather than Omnia, calls on Lone Star to advance the proceeds of the loan. From Lone Star's point of view, a direct assignment of Omnia's pre-existing note to Lone Star would have given Lone Star no greater assurance of repayment than the execution of a new note by Omnia, since the bank's endorsement was to be made without recourse. Under either arrangement the only security, in the absence of the guaranty, would have been the pledge of the two real-estate notes. Consequently, there is no reason to suppose that Lone Star would have had less reason to insist on the guaranty in one case than in the other.

■ Neither can we agree that the bank satisfied the conditions of the original commitment by tendering an assignment of the guaranty by Baird and Smith of the pre-existing Omnia note. After Baird signed that guaranty, and before the assignment was tendered to Lone Star, Baird received a discharge in bankruptcy on his voluntary petition, which listed both the bank and Lone Star on his schedule of creditors. Although a guaranty may be only a contingent liability, it is nevertheless a "provable debt" within section 63(a)(8) of the Bankruptcy Act, 11 U.S.C.A. § 103(a)(8) (1953). 3A Collier, Bankruptcy § 63.19 (14th ed. 1975); *see Maynard v. Elliott,* 283 U.S. 273, 275–76, 278, 51 S.Ct. 390, 75 L.Ed. 1028 (1931). Consequently, the discharge releases the bankrupt's liability on a guaranty, as it does any other provable debt, under section 17(a) of the Act, 11 U.S.C.A. § 35(a) (1953). *See Chevron Oil Co. v. Dobie,* 40 N.Y.2d 712, 389 N.Y.S.2d 819, 358 N.E.2d 502, 503 (1976). As Lone Star points out, a recent amendment to section 14(f) of the Act, 11 U.S.C.A. § 32(f) (Supp.1977), provides that any judgment on a discharged debt is null and void as a personal liability of the bankrupt. *In re Mountjoy,* 368 F.Supp. 1087, 1093–94 (W.D.Mo.1973); 1A Collier, Bankruptcy § 17.28A (14th ed. 1978). However, whether Baird's discharge completely extinguished the guaranty or only afforded an affirmative defense is not material here, since in either event the as-

signment of a guaranty that had been discharged in bankruptcy was no guaranty at all for the purpose of Lone Star's commitment.

In this context, bankruptcy is not merely a matter of the guarantor's insolvency. Regardless of Baird's financial reverses, a guaranty of Lone Star's loan signed by Baird at the time Lone Star was called on to advance the funds might have constituted compliance with the condition specified in the commitment agreement, since it would have provided the basis for a personal judgment against Baird. On the other hand, an assignment of a guaranty signed before the discharge could not have provided the basis for a personal judgment, and, therefore, was not, as the bank contends, equivalent to a new guaranty signed after the discharge. Consequently, we hold that the condition of a personal guaranty by Baird was not met.

The bank further contends that the summary judgment was improper because Lone Star failed to negate the allegations in "Count I" of its petition to the effect that Lone Star's conduct in refusing to perform its commitment was done pursuant to a scheme whereby Lone Star repeatedly issued commitments in return for substantial fees with no intention of performing, and that such a course of conduct "evidences a willful, wanton and reckless indifference to the rights of others, including Plaintiff." We conclude that these allegations, if true, would impose no liability on Lone Star if Lone Star otherwise has no contractual liability under its commitment agreement. No false representation is alleged on which the bank asserts its reliance. "Count I" is merely an allegation that Lone Star should be liable to the bank in damages because Lone Star never intended to perform its commitment. If Lone Star was bound to perform by its contract, then its contractual liability may be enforced. If it has no contractual liability, then no tort liability can be imposed, regardless of whether there was or was not an intention to perform the promise contained in the commitment letter. No authority is cited

to support the bank's contention that lack of intent to perform a promise which a party is not bound to perform is a ground for liability in tort, and we have found none. Any tort claim based on the promise would have to be founded on detrimental reliance, and no reliance on a promise is justified if the promise is expressly subject to a condition that has not been met. *Barrier v. Brinkmann*, 130 Tex. 350, 109 S.W.2d 462, 467 (1937).

Neither would the facts alleged in "Count I" state a claim based on promissory estoppel, even if the bank were permitted to amend and allege the element of detrimental reliance, as required by *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex.1966). If the promise in question is a part of a valid contract, the promisee cannot disregard the contract and sue for reliance damage under the doctrine of promissory estoppel. *Pasadena Associates v. Connor*, 460 S.W.2d 473, 481 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.). On similar reasoning we hold that the bank here cannot enforce Lone Star's commitment to loan money to Omnia in disregard of the express conditions of that commitment, whether or not Lone Star intended to perform the commitment at the time it was made.

Affirmed.