Ida ESPAILLAT, Appellant,

v.

**BERLITZ SCHOOLS OF LANGUAGES OF AMERICA, INC., Appellee.**

No. 20087.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 11, 1967.

Decided Aug. 16, 1967.

Mr. Ira M. Lowe, Washington, D. C., with whom Mr. Stylianos J. Gratsias, Washington, D. C., was on the brief, for appellant.

Mr. John F. Gionfriddo, Washington, D. C., with whom Mr. M. S. Mazzuchi, Washington, D. C., was on the brief, for appellee.

Before DANAHER, BURGER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge.

After a jury trial in the Court of General Sessions, this appellant had been awarded damages of $2,000. The appellee filed its motion for judgment n. o. v. That motion was granted, and on appeal, the District of Columbia Court of Appeals affirmed,[1] having concluded that there was insufficient evidence upon which to base the award of damages. We allowed an appeal to this court solely to consider the question of damages. Since we find error, we will remand for a hearing on damages to be ascertained conformably to this opinion.

Both the trial judge and the appellate court had accepted the jury's finding that this appellant had entered into a personal service contract with Berlitz because of knowingly fraudulent inducement by the appellee. Her contract had called for employment for a year with compensation at the rate of $600 per month.

Additionally as a matter of background, we may note that the record shows the appellant, a native of the Dominican Republic, had graduated from Columbia University in 1942. She had been an assistant professor of English in the University of Santo Domingo for some seven years, and in due course had become chief of the translation section of the State Department in the Dominican Republic at a salary of $500 per month. Returning to the United States in February 1962, she had engaged in free-lance translation work. Before signing her contract with the appellee in May, 1962, she had specifically inquired whether her status as an alien would interfere with the proposed employment and was told by the appellee, untruthfully and knowingly, that it would not. Some two months later Army authorities had required Berlitz to discharge her because it had been learned that she was an alien. The appellant thereafter instituted her action[2] against the appellee.

Having concluded that the appellant had been victimized by the willful misrepresentation attributable to the appellee, the jury returned a verdict awarding the appellant damages of $2,000. The trial judge had instructed the jury "to award the plaintiff such sum as will fairly and reasonably compensate her for all the damages suffered as a result of this fraud." Again, the jury was instructed that the appellant was to receive such compensation as "would make her position as good as it would have been had she not entered into the contract" and further with some lack of clarity the instructions ran,

---

1. Espaillat v. Berlitz Schools of Languages of America, Inc., 217 A.2d 655 (D.C.App. 1966). The District of Columbia Court of Appeals rested its conclusion on the stated ground that there was insufficient evidence upon which the jury "could make a comparison" between the appellant's earnings prior to her employment with Berlitz and "those during the ten months after her discharge." The court thus distinguished its prior holding in Andolsun v. Berlitz Schools of Languages of America, Inc., 196 A.2d 926 (D.C.App. 1964) where judgment had been directed for Andolsun to recover the earnings he would have received throughout the entire year his contract was to run. Andolsun, said the court in the instant case, had been able to establish his "previous income" while the appellant could here produce "no comparable evidence."

2. Her original complaint for breach of contract sought damages of $3,482.42 representing loss of anticipated earnings and expenses, but during trial, she was permitted to amend and to restate her claim on the ground of fraud. That ground had been recognized in *Andolsun, supra* note 1, where Andolsun, relying upon a fraudulent misrepresentation by Berlitz, had given up a position held by him for twelve years and thereupon contracted with Berlitz.

"She testified that she was doing free-lance work. You must take the money that she was making as a result of doing this free-lance work and you must deduct from that the sum to which she has testified that she made after she was fired from this job which amounted to approximately $2700."

It is fair to conclude that the trial judge, confronted with a motion for judgment n. o. v., realized that how the jury was to measure that loss had not been explained. What standards were to be applied in determining how the plaintiff was to recover $2,000 rather than, say, $12,000, or any other such sum, simply had not been spelled out, the judge may have concluded. At all events, respecting only the item of damages, the jury's verdict was set aside.

In due course, the District of Columbia Court of Appeals found itself unable, as its opinion states, to discern evidence "upon which the jury could make a comparison between her earnings prior to her employment with Berlitz and those during the ten months after her discharge." Under such circumstances the court said "[T]he award must have been made on sheer speculation," and at first blush, so it may seem.

The appellate court had observed correctly that basically in tort actions "for fraud or fraudulent inducement to enter into a contract for the sale or exchange of property," the perpetrator of a fraud is liable to respond in such damages as naturally and proximately resulted from the fraud, and the "proximate result" rule "should be employed in a flexible manner."

Such a rule had been announced in Smith v. Bolles, 132 U.S. 125, 129, 10 S.Ct. 39, 33 L.Ed. 279 (1889) and reaffirmed in Sigafus v. Porter, 179 U.S. 116, 123, 21 S.Ct. 34, 45 L.Ed. 113 (1900). As the Court of Appeals in this case realized, where the problem presented involves the sale or exchange of *property,* real or personal, the rule so stated will govern in this Circuit, and the loss sustained by the victim must be made good. Where fraud has been established, our court has said, the relief to which the party defrauded would be entitled "would be the difference between the value of the property which he received and the value of the property with which he parted under the contract." [3]

■ It is our view, however, that a measurement merely in terms of the value of real or personal property sold or exchanged fails of applicability in the requisite "flexible manner" when a contract for personal services has been induced by fraud. Our thought is activated by an observation in the Court's opinion in S.E.C. v. Capital Gains Bureau [4]:

"There has also been a growing recognition by common-law courts that the doctrines of fraud and deceit which developed around transactions involving land and other tangible items of wealth are ill-suited to the sale of such intangibles as advice and securities, and that, accordingly, the doctrines must be adapted to the merchandise in issue."

■■ It may well seem that an issue involving loss upon the termination of a fraudulently induced contract for personal services comes pointedly within the scope of the language quoted. We deem it so that it is no answer to suggest that the damages recoverable by a defrauded party may be difficult of ascertainment. Here again the Court has given us direction:

"Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer

3. Federal-American Nat. Bank & Trust Co. of Wash., D. C., v. McReynolds, 62 App.D.C. 291, 294, 67 F.2d 251, 254 (1933), which expressly relied upon the Smith v. Bolles and Sigafus v. Porter rule, *ubi supra.*

4. 375 U.S. 180, 194, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963).

from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." [Citations omitted.] [5]

 The principles thus stated generally seem singularly pertinent in the instant case as we scrutinize the ground upon which the intermediate appellate court had relied. Although its opinion discussed the "benefit of the bargain" rule and the "out of pocket" standard,[6] neither by itself will here provide explicitly an apt gauge for recovery where suit was brought after the contract period had expired and when all the facts as to appellant's earnings and loss had been known.

The District of Columbia Court of Appeals as previously noted,[7] had permitted an award of damages to Andolsun measured by the salary which the appellee had agreed to pay. The Court of Appeals there had rested Andolsun's entitlement upon the fraudulent misrepresentation by this same appellee. It has seemed to us that this appellant's right should not fall because of the absence of a "comparison" between this appellant's earnings in a like engagement prior to her employment by this appellee and what her earnings would have been throughout the remaining period of her contract. This appellant should have the benefit of a rule which will allow her to measure her loss by first determining the value of the contract.[8] And the worth of her services is one element of that value.[9] We are not here concerned with what damages may in future necessarily and proximately result from the fraud but with what the appellant lost as a result of the fraud.

5. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). And see Bigelow v. RKO Radio Pictures, 327 U.S. 251, 265, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

6. Many state courts and various text writers have sought differing methods of reconciliation of the two approaches, depending upon the subject matter of the contract. See e. g., Rice v. Price, 340 Mass. 502, 164 N.E.2d 891, 896 (1960); Hanson v. Ford Motor Company, 278 F.2d 586, 594 et seq. (8 Cir. 1960), tracing Minnesota law; and Janigan v. Taylor, 344 F.2d 781, 786 (1 Cir. 1965) considering Sigafus, supra. Where in Janigan, the defendant had gained a profit through his material misrepresentations, the defrauding party here secured a contract with the Department of Defense, offering the services of this appellant and of Andolsun, supra note 1.

W. Prosser in his TORTS, pp. 751, 752 (3d ed. 1964) observes that few courts have followed either rule with entire consistency. He noted various suggestions for meeting the problem including one that alternatively the court "should adopt the rule which best fits the certainty of damages proved, and so avoid the possibility that a plaintiff who has suffered real damage may be denied recovery because he is unable to prove values."

Our discussion involves the problem of recovery following fraudulent misrepresentation in the inducement of a subsequently terminated contract for personal services and the value of those services as a factor in measuring the appellant's loss. Cf. Partridge v. Norair Engineering Corporation, 112 U.S.App.D.C. 165, 168, 301 F.2d 247, 250 (1962), and see 5 A. CORBIN, CONTRACTS p. 221, n. 60, Comment (1964).

7. Supra notes 1 and 2.

8. Cf. Pierce v. Tennessee Coal, Iron & Railroad Co., 173 U.S. 1, 16, 19 S.Ct. 335, 43 L.Ed. 591 (1899).

9. In Hanlon v. Macfadden Publications, 302 N.Y. 502, 99 N.Ed.2d 546, 551 (1951), the Court of Appeals observed in an action for deceit that the plaintiff had parted with personal services, and the court went on to say "The only distinction in the present case is that the jury was required to calculate the value of the plaintiff's services instead of the value of the 'thing bought, sold or exchanged.'" Cf. Smith v. Bolles and Sigafus v. Porter, text supra.

■■ The jury will be instructed to ascertain the value of the contract to the appellant. The trial judge will charge that the jury's determination will not necessarily be based upon the amount of the promised salary, but the jurors will be free to consider as some evidence of that value that the parties themselves had agreed that the appellant was to receive $600 per month. As some measure of what the *appellee* deemed the contract to be worth, the jury will consider additionally the value of the appellant's services. Among other factors susceptible of proof, the jury may take into account the appellant's qualifications for the undertaking in question and her earning power in various capacities reasonably related to the nature of the services the appellee intended she should render over the contemplated life of the contract. Included as tending to establish the worth of such services will be the appellant's prior experience as a translator, and the value of such later services as this appellant had actually rendered to this very appellee.[10] To be considered also in fixing a basis for recovery are such expenses as were necessarily incurred as the appellant sought employment after the termination of her contract.[11]

As may be requisite, the trial judge will, of course, adapt further instructions to the proof offered to the end that recovery will include "such damages as naturally and proximately resulted from the fraud." [12]

■ The jury will further be instructed that the appellee shall receive certain credits. From the valuation fixed for the appellant's loss, to be determined as we have discussed, the jury must be told to deduct the compensation received from the appellee by the appellant prior to her discharge. Additionally, the appellee must receive credit for the amounts the appellant had earned during the balance of the contract period following her discharge.

We think there was error respecting only the issue of damages, and we will remand for a new trial on that sole issue.[13] Fed.R.Civ.P. 59(a) provides that a new trial may be granted to any party on all "or part of the issues * * *." The Court of General Sessions has a comparable rule, 59(c).[14]

Reversed and remanded for further proceedings as to the issue of damages.

---

10. The spokesman for the appellee testified that this appellant was highly competent in the Spanish language; indeed from some time in October 1962 and down to the end of November in that year she had performed translation services for Berlitz for which she was paid $852.90.

11. Beggs v. Dougherty Overseas, Inc., 287 F.2d 80, 82 (2 Cir. 1961). The record evidence in the instant case indicates that this appellant had incurred such expenses in the amount of $252.

12. Sigafus v. Porter, *supra*, 179 U.S. at 123, 21 S.Ct. at 36.
 Although in some circumstances fraud may justify punitive damages we do not regard the misrepresentation here disclosed to be of such character as to predicate recovery either of punitive damages or of counsel fees. See Brown v. Coates, 102 U.S.App.D.C. 300, 303 *et seq.*, 253 F.2d 36, 39 *et seq.*, 67 A.L.R. 2d 943 (1958); cf. Ballard v. Spruill, 64

App.D.C. 60, 62, 74 F.2d 464, 466 (1934); Schlein v. Smith, 82 U.S.App.D.C. 42, 160 F.2d 22 (1947).

13. Thus we have undertaken some detail as to how the jury will measure the appellant's damage. Cf. Peoples Mortg. Corporation v. Bedrosian, 81 U.S.App. D.C. 69, 70, 154 F.2d 332, 333 (1946); as was true in that case, testimony should be confined to aspects relevant to the establishment of the value of appellant's contract along the lines and otherwise as we have discussed.

14. Compare Gasoline Prods. Co. v. Champlin Refining Co., 283 U.S. 494, 499, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); Furr v. Herzmark, 92 U.S.App.D.C. 350, 354, 206 F.2d 468, 472 (1953); Devine v. Patteson, 242 F.2d 828 (6 Cir.), cert. denied, 355 U.S. 821, 78 S.Ct. 27, 2 L. Ed.2d 36 (1957); Thompson v. Camp, 167 F.2d 733, 734 (6 Cir. 1948). And see 6A J. MOORE, FEDERAL PRACTICE ¶ 59.06, at 3761 n. 9 (2d ed. Supp.1966).