**In the Matter of Marion R. KRATZER, Debtor.**

**Rex E. BABCOCK, Plaintiff,**

v.

**Marion R. KRATZER, Defendant.**

**Bankruptcy No. 80–02819–3.
Adv. No. 80–0514–3.**

United States Bankruptcy Court,
W. D. Missouri, W. D.

Feb. 20, 1981.

As Amended March 13, 1981.

236

Don A. Peterson, Brenner, Lockwood & Peterson, Kansas City, Mo., for plaintiff.

Larry Grimes, Grimes & Hoffman, Blue Springs, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE, DECLARING DEFENDANT'S INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $5,799.70 TO BE NONDISCHARGEABLE IN BANKRUPTCY AND JUDGMENT ACCORDINGLY THAT PLAINTIFF SHOULD HAVE AND RECOVER THE SAME SUM FROM DEFENDANT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff in this action filed a complaint for a decree of nondischargeability of

the defendant's alleged indebtedness to him for plaintiff's alleged share of a common business, lost salary and commission, and certain expenses which he alleged to have been due him by reason of defendant's alleged fraudulent misrepresentations. More particularly, the plaintiff alleged and contended that the defendant promised to issue him 50% of the shares of a corporation which the defendant purported to be forming, thus entitling plaintiff to half of its profits.

█ The court conducted initial plenary hearings on the merits of the complaint on the dates of November 24, 1980, and December 8, 1980, thereby hearing all the parties' evidence on the issue of liability and compensatory damages. On the latter date, at the conclusion of the proceedings, the court orally rendered a decree of nondischargeability for plaintiff and against the defendant in an unstated sum, together with oral findings of fact and conclusions of law as follows:

"Well, I think the evidence before the court at this time is quite clear, both as to the alleged misrepresentation and the value which was given in reliance on it. There is not much question as a result of the court's hearing the evidence that in early February of 1978 a promise was made to Mr. Babcock that, if he performed as a salesman for the corporation, he would receive 50% of the stock which would be issued forthwith. The defendant contends that he only intended to convey the idea that there was a possibility of issuance of stock at a later time. But it is incredible to me that the plaintiff, who had long been a salesman of computer products and other products, would have turned over the Van Biber order relying upon this statement if it hadn't had the form of a clear promise.

"And the next question is (if, as the court has found, there was a promise), whether there was a concurrent absence of intention to fulfill the promise. The testimony of Mr. Lehane is clear, it is uncontradicted, and it is to the effect that Mr. Kratzer on October 31, 1978, told him 'Yes sir, I made these promises. I never intended to fulfill them and I had to do it because my business had to survive and I never had any intention to fulfill the promises.' So, in all, I think there is a liability which is nondischargeable in bankruptcy based upon this statement.

"The chief problem in this case, of course, is the amount of damages. The plaintiff has presented evidence reporting a sale in the Van Biber case and showing that, with the reasonable subtractions for expenses, the profit could be around $4,546.00. The defendant has countered this with a series of statements and claimed expenses which can be only attached to the Van Biber account through the extraneous unsupported testimony of the defendant. It seems unlikely that in respect to the Van Biber account the profit which was expected wouldn't have been gained. So, I think that one half of $4,546.00 should be allowed the plaintiff and that is, according to my calculations, around $2,273.00. That can be corrected in writing.

"The next thing is, I think, that there is no clear evidence of what losses were sustained by the plaintiff according to the contract that he says he entered into, except that there was a $299.41 gain for the year 1978, as shown by the defendant's income tax returns. If you amortize that for the period between February and April, approximately a two month period, it is approximately $24.95 a month. So you have around $49.90 in profit which should be attributable to those months, I feel.

"Then, finally, the defendant admits that he took the total $14,745.08 out of the corporation as a salary. I think that it ought to be amortized over the two month period. It would be $1,228.75 per month. And there was a two month period so it would be $2,457.50 but only half of that should go to the plaintiff. So you would have $24.95, plus $1,228.75, plus $2,273.00, which I believe constitutes the allowable damages, by arithmetic, the total to be gained. To save time and effort that is my analysis of the evidence at this time.

"Now, if you still want to brief it, and show some other element or the lack of some other element which I don't believe the evidence shows, then that is fine. I don't believe that there is basis, contractual or otherwise, to award the plaintiff his expenses of travel and the like. He just had no expectation of this according to the evidence which he himself has given to the court. I believe there is a basis for the other components of the evidence. Now, if you want to brief this matter, that is fine, but that is the analysis of the evidence at the close of all the evidence."

\* \* \* \* \* \*

Mr. Peterson: "Your Honor, also I think the plaintiff's evidence on the $4,546.00 figure I believe was already taken into account, the half of the gross profits on the sales is my understanding, Your Honor."

Court: "That is one half the gross profit?"

Mr. Peterson: "Yes, Your Honor."

Court: "I will have to go through my notes if that is one half. That will have to be his portion then the whole thing wouldn't have to be halfed to $2,273.00. Is that your memory of it?"

Mr. Grimes: "It may very well be the case because I was surprised at the figure."

Court: "That will be a clerical error that will be corrected."

Mr. Grimes: "I believe that may be correct."

Court: "I will have to adjust it then. It is just a matter of arithmetic. You—can have 10 days to brief this damages issue."

On the basis of these findings, it is determinable that the amount of compensatory damages on their basis is the sum of $4,546.00 plus $1,228.75 plus $24.95. The total is $5,779.70.

Upon the rendition of these findings and conclusions, however, counsel for the plaintiff protested that there were no findings or conclusions on the issue of punitive damages. Whereupon the court noted that the plaintiff had not clearly requested any award of punitive damages in the complaint[1] and had not offered any proper proof of his entitlement to punitive damages.[2] But, in order to do justice and re-

---

1. In his complaint in the action at bar, the plaintiff materially stated that he "is the holder of a judgment against the debtor/defendant in the principal sum of $35,000.00 and costs with interest accruing thereon from and after May 27, 1980 at the statutory rate of 9 per cent (9%) per annum"; that "said judgment is wholly unsatisfied"; that "the aforesaid debt is non-dischargeable under Section 523(a)(2)(A) in that said judgment results from the fraud of the debtor/defendant in the taking of property and services of the plaintiff"; and that plaintiff therefore requested "the the Court determine that said judgment debt owed by the debtor to plaintiff is non-dischargeable, that the Court grant plaintiff relief from the stay and injunction on enforcement of his said judgment and that the Court award him his costs herein incurred and expended." A copy of the state court judgment was attached to the complaint, in which the state court found that "the plaintiff suffered actual damages in the sum of $25,000.00 as a result of ... fraud and ... the conduct of defendants in its perpetuation was willful, wanton and malicious so as to entitle plaintiff to exemplary damages in the sum of $10,000.00." It appears from the allegations and requests for relief thus made that the plaintiff intended the bankruptcy court to rely wholly upon the state court record and simply en-force the state court judgment. But, under the rule of *Brown v. Felsen*, 442 U.S. 127, 138, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979), that would not appear to be appropriate. In that case, the Supreme Court held that refusing to apply the doctrine of res judicata in an action like that at bar "would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which petitioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve. That court can weigh all the evidence, and it can also take into account whether or not petitioner's failure to press these allegations at an earlier time (or the respondent's failure to defend them) betrays a weakness in (either) case on the merits." When the bankruptcy court is therefore authorized to determine the matter anew, it appears that proper pleading would include a claim for punitive damages, if such an award is desired from the bankruptcy court.

2. No evidence beyond that of the fraud which the nondischargeability decree is based upon was offered on the punitive damages issue. Cf. note 5, *infra*.

solve the entirety of the controversy between the parties, the court permitted the plaintiff to amend his complaint by interlineation[3] to state a claim for punitive damages. And an adjourned hearing was held on December 23, 1980, on the issue of punitive damages.

No new material facts were demonstrated by the hearing of December 23, 1980. The defendant Kratzer, in his testimony, denied any actual intention to defraud or any actual spite or ill will toward the plaintiff. The plaintiff's evidence, as before, was to the effect that the defendant had intentionally misrepresented his intention not to issue the shares to plaintiff even as he promised to do so, all of which the defendant denied.[4] Thus, based on virtually the same evidence as before, the plaintiff asserts a right to punitive damages.

■ It may be true that, under the law of Missouri, punitive damages are awardable on a showing of "legal malice," as opposed to "actual malice." "In some jurisdictions exemplary damages can be assessed only upon a showing of malice in fact as distinguished from malice in law, but in others legal malice as distinguished from actual malice will justify their allowance." 22 Am.Jur.2d *Damages* section 250, p. 342, citing *Bourne v. Pratt & Whitney Aircraft Corp.*, 207 S.W.2d 533 (Mo.App.1948), as a decision holding that "legal malice" is a sufficient predicate for punitive damages. And, in that case, it was distinctly held that "legal malice, as distinguished from actual malice will justify exemplary damages in this state." Further, as the plaintiff contends, "legal malice" is defined as not necessarily meaning "actual ill will or spite, but ... merely intentional doing of a

wrongful act without just cause or excuse." *Id.* at 542.

■ In the action at bar, moreover, the finding by the court that an intentional misrepresentation was made by the defendant necessarily means that there has been "legal malice" and that the case thus contains the necessary predicate for an award of punitive damages.[5] But "[e]xemplary damages are incapable of definite ascertainment and from their nature cannot be governed or measured by any precise rules." 22 Am.Jur.2d *Damages* section 264, p. 358 (1965). See also *Lyons v. St. Joseph Belt Ry. Co.*, 232 Mo.App. 575, 84 S.W.2d 933, 946 (1935), to the following effect:

" '[A] hard and fast rule for the measuring of such damages cannot be declared. Each case turns more or less upon its own peculiar facts. The character and standing of the parties, the malice with which the act was done, and the financial condition of the defendant are elements which should be taken into consideration in awarding damages of this character ... and the amount may be such as would by way of punishment and example serve to deter the occurrence of like acts in the future.' "

Further, "ordinarily a verdict for punitive damages should not be altogether disproportionate to the amount of actual damages returned." *Id.* at 947. Further, punitive damages "should not be awarded in a case where the amount of compensatory damages is adequate to punish the defendant." 22 Am.Jur.2d *Damages* section 264, p. 359. See also, *Price v. Ford Motor Credit Company*, 530 S.W.2d 249, 256 (Mo.App.1975), to the following effect:

wrong committed and such aggravating circumstances as may be shown rather than the measure of compensation to plaintiff." *Woods v. Standard Personal Loan Plan, Inc.*, 420 S.W.2d 380, 387 (Mo.App.1967); "The question of whether or not punitive damages shall be awarded and, if so, in what amount rests peculiarly in the discretion of the jury (or other finder of fact)." *Fong v. Town & Country Estates, Inc.*, 600 F.2d 179, 183 (8th Cir. 1979) (applying Missouri law).

---

3. See note 1, *supra*.

4. In the hearing on the issue of liability, however, the testimony of Lehane (summarized on pages 2 and 3 of the text of this memorandum) to the effect that the defendant had revealed his intention not to issue the shares to the promisees was not denied.

5. Nevertheless, "whether punitive damages are to be awarded is largely a matter within the discretion of the jury (or other trier of fact) who are to keep in mind the nature of the

"[I]t is clear that the award of punitive damages is discretionary with the jury [or other trier of fact], cannot be measured by a pre-set formula, varies according to the facts in each case and is not to be reversed except on a clear showing of abuse of discretion ... The jury [or other trier of fact] must weigh, among other things, what amount this particular defendant should be made to pay so that the penalty will act as an effective deterrent."

Under all the facts which have been demonstrated by the evidence in this case, this court concludes that that award of compensatory damages above awarded is sufficient to punish the defendant. There is little in the facts of this action to distinguish it from any other nondischargeability action in which the result is to find the indebtedness to be nondischargeable. The findings which have been made above show the defendant to have made the misrepresentation at a time when the business enterprise which was its subject was in a doubtful state, had not yet really commenced operations, and when his promises, albeit untruthful, were made for the purpose of making a business operational which, if it had been successful, might have benefitted the promisees as its employees. Further, because of the incipient and unproven status of the business in which the plaintiff was promised a 50% interest, his reliance interest could not reasonably have been a great one. And it is adequately compensated by the award of actual damages which has been outlined above. If this court were to be compelled to award punitive damages on the facts of this case, it would be difficult to imagine why it should not award punitive damages in any case in which a decree of nondischargeability has been entered.

## II

In his posttrial brief on the issues of damages, the plaintiff seems to predicate his claim for punitive damages, at least by implication, upon his having obtained a state court judgment for some $35,000—$25,000 actual and $10,000 punitive—damages. But, under the rule of *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the court of bankruptcy, in making its nondischargeability determinations, is not to be bound by prior state court judgments and determinations, particularly when, as was the case here, the state court judgment was taken by default.[6] This court therefore rejects the plaintiff's implied assertion that it is bound by the state court determination in awarding damages, either actual or punitive.

## III

The posttrial brief of the plaintiff also asserts that he should be granted actual damages beyond the half of the profits and reasonable expenses which this court has previously been disposed to award. Chiefly, the plaintiff contends that he is entitled to be granted damages for the reasonable value of his services at the rate of $2,000 per month.[7] In support of his con-

---

6. See note 1, *supra*. See *Brown v. Felsen*, 442 U.S. at 135–6, 99 S.Ct. at 2211–2212.

7. In "plaintiff's brief on issue of damages," he asserts that he is entitled to recover, in addition to the value of the "Van Biber contract right for sale," "his expenses in furtherance of the business of defendant" and "compensation for his labor and services rendered on behalf of defendant." On the latter contention, he states more specifically that "(b)oth the plaintiff and his witness James Hoel's uncontroverted testimony was to the effect that the reasonable value of plaintiff's services to defendant and his business equaled the sum of $2,000.00 per month. The plaintiff labored uncompensated on behalf of defendant from February 7, 1978 through April 18, 1978 for a total of ten weeks. Calculated arithmetically, the reasonable value of plaintiff's services during that period equals the sum of $4,615.40 (10 × 461.54) Plaintiff is entitled to recovery of this amount as an element of his actual damages incurred as a result of defendant's fraud." He further states that "out of pocket expenses incurred by plaintiff as a result of defendant's fraud include mileage calculated on the basis of the 25,000 business miles driven by him in 1978 averaged over the ten week period during which he labored gratuitously for defendant which at $.15 a mile equals the sum of $720.00. Business lunches estimated by plaintiff at $20.00 a week over the ten week period result in an additional $200.00 item of actual damage. Further, plaintiff in-

tention in this regard, the plaintiff cites 37 Am.Jur.2d *Fraud and Deceit* section 375 (2d ed. 1968), to the effect that:

> "If a person is induced by false and fraudulent representations to render services gratuitously to the person making the representations, without any compensation therefor, the measure of damages is the reasonable value of the services fraudulently procured."

But this rule presumes a contract, express or implied, for compensation of the services according to their value.[8] And, according to the evidence in the action at bar, such a contract did not exist in this case. Rather, plaintiff offered his services for half of the profits of the defendant's business.

curred air fare of $158.00 and a hotel expense of $24.61 as a result of his traveling to Texas with defendant to tour the Texas Instruments Computer facilities in preparation of his execution of a OEM Agreement with defendant in a capacity as vice president of defendant's business ... In all, actual damages incurred by plaintiff with services and expenses for which he is entitled to recover against defendant equal the sum of $4,718.01."

8. According to the allegations and proof in the action at bar, it was the expectation of the plaintiff, in making the agreement with defendant, that his services and expenses would be compensated and reimbursed by the profits of the defendant's prospective corporation. Under such circumstances, the rule of reason is that the expectation interest of the defrauded party should be compensated. For the plaintiff's reasonable reliance was upon his services' being compensated by half of the profits which he believed himself to be undertaking with the defendant. This rationale gives to plaintiff, in substance, the "benefit of the bargain," which compensates him more handsomely than the "out-of-pocket" standard and also provides a better basis for arriving at the value of the contract under the circumstances of the action at bar. A court "should adopt the rule which best fits the certainty of damages proved, and so avoid the possibility that a plaintiff who has suffered real damage may be denied recovery because he is unable to prove damages." W. Prosser, Torts 751, 752 (3d ed. 1964). The recovery should not include *both* the "benefit-of-the-bargain" and the "out-of-pocket" elements when they would be duplicative of each other, as they would be in the action at bar. In one case, it was held that the reasonable value of the defrauded party's services might be recovered even when "he expected to be reimbursed for his efforts from the profits of the project ..." *Sutter v. General Petroleum*

Also, in his posttrial brief, the plaintiff takes issue with some of the deductions which the defendant has claimed from the Van Biber sale in order to reduce the profit margin. But this court finds the evidence supporting the deductions to be credible[9] and thus in consonance with the award of actual damages which was made orally at the conclusion of the hearing of December 8, 1980.

■ Finally, the court agrees with the contentions of the plaintiff that prejudgment interest should be awarded from the time when the amount of damages should have been paid by the defendant to the plaintiff.[10] Under all the evidence which

*Corp.*, 28 Cal.2d 525, 170 P.2d 898, 900 (Cal. 1946). But that rule was invoked in a case in which the "possible realization of profits (might be) speculative," *id.* at 903, and the reasonable value of the services could be demonstrated. Further, the court in that case made its ruling without determining whether the "loss of time is to be measured by the profits from the enterprise." *Id.* See also *Espaillat v. Berlitz Schools of Languages*, 383 F.2d 220 (D.C.Cir.1967), to the effect that the damages for services induced by fraud should "measure (the) loss by ... determining the value of the contract" and that, at most, "the worth of (the) services is one element of that value" rather than an amount to be superadded to that value.

9. As noted above on pages 237, 238 of the text of this memorandum, the plaintiff's view of the evidence of the profit on the Van Biber sale has been adopted in this regard. But plaintiff goes on, in his posttrial brief, to state that a value should be assigned to the "enhancing effect" which the Van Biber sale had on the defendant's business. But, for the reasons stated in note 8, *supra*, the court has held that he must be satisfied with the one-half portion of the profits which awards and compensates his expectation interest. And there is no sufficient and direct proof that defendant's business was enhanced by the sale, beyond the profit which was realized upon the sale. The evidence is insufficient that the Van Biber sale enabled or facilitated the defendant in making any other subsequent sale or that it otherwise in fact enhanced the business of the defendant or led to any profit other than that which has provided the basis for the award of damages to the plaintiff.

10. "The right to recover interest in an action based upon fraud has been upheld in actions for damages for fraud and deceit ... (but) the

has been submitted to the court, it is found that the amounts due the plaintiff should have been paid him by the defendant on or before April 18, 1978.[11] Interest at the appropriate statutory rate will be awarded, therefore, from that date.[12]

Accordingly, for the foregoing reasons, it is hereby,

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the defendant to the plaintiff in the sum of $5,799.70 plus interest be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that plaintiff have and recover from defendant the sum of $5,799.70, plus interest from April 18, 1978, at 6% per annum, plus his reasonable costs.

general principle that interest is not allowed on unliquidated damages or demands has not infrequently been invoked to justify the disallowance of interest in actions based on fraud." 37 Am.Jur.2d *Fraud and Deceit* section 379, pp. 512, 513, 514 (1968). "In an action for fraud, where the demand can be ascertained by computation and when the time from which interest, if allowed, must run can be ascertained, the jury may be instructed that they may allow interest." *Wolfersberger v. Miller*, 327 Mo. 1150, 39 S.W.2d 758, 765 (1931). In the action at bar, as of the date when the defendant revealed his intention not to issue the shares, April 18, 1978, the sums due the plaintiff, as demonstrated in this memorandum, were calculable and they should have been calculated and paid then.

11. As is noted in the prior text of this memorandum, April 18, 1978, was the date on which the defendant, according to his testimony, made the final determination that shares were not to be issued and that no corporation, accordingly, was to be formed.

12. As of April 18, 1978, section 408.020 RSMo provided for interest at the rate of 6% per annum.