**In the Matter of Kenneth Wayne WEATHERS, Debtor.**

**Donald SPEER, Plaintiff,**

**v.**

**Kenneth Wayne WEATHERS, Defendant.**

**Bankruptcy No. 83–02537–SW.
Adv. No. 84–0002–SW.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

April 25, 1984.

R. Deryl Edwards, Joplin, Mo., for plaintiff.

David L. Taylor, Myers, Taylor & Whitworth, P.C., Webb City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE DECLARING THE DEFENDANT'S INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $11,500.00 TO BE NONDISCHARGEABLE IN BANKRUPTCY AND JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SAME SUM PLUS INTEREST FROM THE DEFENDANT

DENNIS J. STEWART, Bankruptcy Judge.

This is an action brought by the plaintiff, seeking a decree of nondischargeability of a pre-existing state court judgment in his favor for injuries to his person which he states were willfully and maliciously inflicted upon him by the defendant within the meaning of section 523(a)(6) of the Bankruptcy Code. After joinder of the issues by the pleadings, the action came on before the bankruptcy court for hearing on March 2, 1984, in Joplin, Missouri. Whereupon the plaintiff appeared personally and by counsel, R. Deryl Edwards, Esquire, and the defendant also appeared personally and by David L. Taylor, Esquire, his counsel. According to the evidence which was then adduced, the following are the facts upon which the court must base its decree and judgment. The plaintiff, a police officer of the Joplin, Missouri, police department, was on patrol duty on the date of the occurrences here in issue.[1] He observed a vehicle in a Joplin park which was being driven in an area where driving was prohibited by the municipal ordinances of the City of Joplin. The plaintiff's testimony was to the effect that the violation was being carried out in a flagrant manner, with the car cavorting in circles in an area not intended as a driveway. The defendant's testimony is that he was a passenger in the vehicle being operated by his sister and that they only stopped in the park for the purpose of using the restrooms and drove across a tennis court in doing so. Still, there is no direct denial or contradiction of the fact

---

1. Further, the plaintiff was in the uniform of a police officer of the City of Joplin and it was, or should have been obvious, to all who observed him during the occurrence which is the subject of this action that he was in the lawful performance of his duty as such a police officer.

that the plaintiff had reasonable grounds to believe that a violation of the city laws had been or was being committed. Accordingly, he drove his patrol car into the proximity of that in which the defendant was a passenger. He accosted the driver of that car and commenced to request an appropriate amount of identification, including a driver's license. At the time this was being done, she had emerged from the automobile which she had been operating and was standing outside of it. As the plaintiff was questioning the driver, the defendant emerged from the vehicle and demanded to know of the plaintiff "what he was doing." The plaintiff replied that he was questioning the driver respecting the potential violation. The defendant became irate and stated that the woman being questioned was his sister, wife or girlfriend and plaintiff had no right to ask questions of her. The plaintiff requested that the defendant keep his distance and not continue to approach the spot where he was questioning the driver. As the plaintiff was continuing his questioning of the driver for the purpose of filling out a "field interrogation card," the defendant continued to grow more irate. The plaintiff, on the other hand, continued, in strong terms,[2] to urge the defendant to keep his distance. The defendant, however, continued to demand to know why the questioning was being continued and to insist that plaintiff had no proper right or power to continue it.

Out of this increasingly intense situation, an altercation developed between the plaintiff and defendant. The evidence is in conflict as to which of the contestants started it and in what manner. According to the testimony of the defendant, as he inquired of plaintiff as to the reason for the arrest or potential arrest, the plaintiff commanded him to "get back" two successive times; and, after the second command, he grabbed the defendant by the shirt and threw him against the car in which he had been riding. The plaintiff, on the other hand, stated

that, despite his admonitions to the defendant to "stay back," the defendant continued to approach even closer to him and then struck the plaintiff in the left jaw with his right hand. The blow knocked the plaintiff to his knees, whereupon the defendant kicked him in the groin several times, causing the plaintiff to lose consciousness.

At this point, other police officers arrived and intervened in the altercation so as to render the defendant unconscious and place him under arrest. The plaintiff was taken to a Joplin hospital where he was treated for a brain concussion and severe swelling of the groin area. He spent two full days in the hospital under the care of a Dr. Long and thereafter took physical therapy treatments for his injured groin. Although he had suffered a large contusion on his head, he is not aware of any permanent damage which he has continued to suffer.

The plaintiff testified that he did not pay any of the medical bills directly; that they were paid by the City of Joplin, who then obtained at least some reimbursement by means of deductions from his salary; that he also "lost some salary"; that initially workmen's compensation paid 80% of this salary loss, but those payments later went down to 60%; that the uncompensated salary loss amounts to about $400.00; that he lost 10 days of work after the accident; that he believes that his total out of pocket expenses attributable to the altercation were "over $1,000.00" but he "just doesn't recall" the exact amount; and that he has not yet signed any subrogation agreement and regards himself bound to repay the city government and the insurance company for the medical and other bills paid by them.

He also states that, after being knocked unconscious by the defendant, he regained consciousness in time to hear the back-up police officers, in placing the defendant under arrest, inquire of defendant as to his

---

**2.** The defendant's testimony is to the effect that the plaintiff, in instructing him to "stay back," used stronger language than the plaintiff has admitted to. But the evidence shows clearly that an admonition was necessary in view of the defendant's continued and menacing approach to the plaintiff.

place of residence and to hear the defendant reply "904 Central." Accordingly, the plaintiff instituted a civil suit against the defendant and served the summons therefor on the defendant at 904 Central in Joplin, where the summons was actually served on a relative of the debtor in accordance with the governing Missouri statutes and rules.[3]

The defendant, however, did not appear, personally or by counsel, for the trial before the state court. The plaintiff appeared before that court personally and by counsel. According to his testimony before this court in this action, he testified before the state court essentially to the same effect as he testified before this court. The Circuit Court of Jasper County issued its judgment on October 2, 1979, to the following effect in *Donald Speer v. Kenny W. Weathers*, Case No. CV179–708CC:

> "Now on this 2nd day of October, 1979, the Plaintiff appears in person with his attorney, Mr. Donald Sotta, and the Defendant fails to file responsive pleading having previously been properly served with summons more than 30 days prior to this date, and fails to appear. Hearing held on Plaintiff's petition for damages. The Court having heard all the evidence finds the issues in favor of the Plaintiff and against the Defendant and assesses Plaintiff's actual damages at $10,000.00 and punitive damages at $20,-000.00.
>
> Wherefore, it is ordered and adjudged by the Court that the Plaintiff have and recover of and from the Defendant the sum of $10,000.00 as and for actual damages as aforesaid and the sum of $20,-000.00 as and for punitive damages as aforesaid together with all costs of this action, and that Plaintiff have execution therefor."

It is the contention of the plaintiff in this court that the judgment of the state court is binding on this court under the doctrines of *res judicata* or collateral estoppel; that, in awarding not only actual damages, but also punitive damages, the state court necessarily determined the same issues of willfulness and malice which are necessary to the nondischargeability determination in this court; and that, therefore, that determination is dispositive of the issue in this court. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court of the United States held that, although the doctrine of *res judicata* was not ordinarily applicable to bind the bankruptcy court's dischargeability determination according to prior state court liability determinations, the doctrine of collateral estoppel might apply if the state court had previously determined the precise issues involved in the federal court's dischargeability determination.

> "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court."

But a comparison of Missouri decisions as to what constitutes willfulness and malice with federal court decisions as to what constitutes willfulness and malice for the purposes of § 523(a)(6), *supra*, reveals a considerable difference in standards. The state courts, on the one hand, continue to be guided by the definition of "legal" malice, as opposed to actual malice.[4] Consequently, they impose punitive damages upon a finding of the intentional violation of a known right of the other party.[5] But our federal district court, in interpreting

---

**3.** Under Rule 54.13 of the Missouri Rules of Civil Procedure, service upon an individual may be obtained "by delivering a copy of the summons and petition to him personally or by leaving a copy of the summons and petition at his dwelling house or usual place of abode with some person of his family over the age of 15 years ..."

**4.** See the cases quoted and analyzed in *Matter of Kratzer*, 9 B.R. 235, 239 (Bkrtcy.W.D.Mo.1981).

**5.** *Id.*

§ 523(a)(6), and its predecessor statute, have imposed a rigid subjective standard which requires proof of an actual evil intention. See, e.g., *In re Bellmer*, Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980), requiring evidence of a "subjective, conscious intent" to injure the other person on his property. See also *Matter of Roberts*, 8 B.R. 291, 293 (W.D.Mo.1981), excusing the injury if inflicted in a belief that the inflicting party had a right to do so, even if that belief is an unreasonable belief. Cf. *Matter of Norton*, 21 B.R. 725, 728, n. 11 (Bkrtcy.W.D.Mo.1982); *Matter of Lewis*, 17 B.R. 46 (Bkrtcy.W.D.Ark.1981). The federal courts do not, therefore, apply the same rule of decision on this issue as the state courts and the matter is accordingly not *res judicata* or otherwise pre-determined under the doctrine of collateral estoppel.

■ This court must, therefore, independently determine the dischargeability issue on the basis of the evidence before it (which may include evidence, to the extent offered and admitted, of the evidence adduced to the state court[6]). In so doing, this court must conclude that, according to the facts found above, the evidence is overwhelmingly to the effect that defendant willfully and maliciously inflicted injuries on the plaintiff. Defendant protests in his testimony that the plaintiff was first to make physical contact by grabbing him by the shirt and throwing him against the car (a contention which plaintiff's testimony sharply disputes). But the uncontradicted portions of the evidence clearly show that, by the time this is alleged to have happened, he continued menacingly to approach the plaintiff, a uniformed police officer, despite the latter's continued warnings to "stay back." The evidence thus demonstrated that, even if defendant's recounting of the incident must be accepted, plaintiff was justified in taking the physical measures which he allegedly took to ensure that the defendant kept his distance from him. The defendant's subsequently striking the plaintiff, knocking him to the

ground in the process, and then kicking him repeatedly in the groin must be regarded as unexcused and accompanied by willfulness and actual malice. This malice had its origins in the defendant's commencing a menacing approach of the plaintiff, a uniformed police officer obviously in the lawful and correct performance of his duty, and his continuing in that menacing approach despite the plaintiff's warnings that he should cease and desist from doing so. This court must therefore find, from the evidence before it, that the injuries to plaintiff were willfully and maliciously inflicted by defendant.

■ On the issue of damages, a court is bound by a state court judgment only if, again, the precise issue before this court was previously decided by a state court. It is a fundamental maxim of the law of bankruptcy that the existence and magnitude of valid claims against the debtor as of the date of bankruptcy are ordinarily determined solely by state law. "What claims of creditors are valid and subsisting obligations against the bankruptcy at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protect. Com. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). Even though a dischargeability claim such as that at bar is triable and determinable only in the bankruptcy court, the underlying liability and damages may be determined in a state court. *In re Mountjoy*, 368 F.Supp. 1087, 1096 (W.D.Mo.1973). The state court judgment remains effective and binding until reversed or set aside according to the available state court procedures.

■ In this action, however, because of the crucial difference between the Missouri definition of malice and the federal definition of "willful and malicious," the bankruptcy court must, under the overriding federal standards here applicable, make its

---

6. See, e.g., *In re Mountjoy*, 368 F.Supp. 1087, 1096 (W.D.Mo.1973) ("Upon a judgment on the claim in the state court, the bankruptcy court can review the record, hear additional evidence if offered or desired, and then make a determination on the crucial issue of dischargeability.").

own findings as to the damages. The governing federal statute imposes this duty on the bankruptcy court when the letter of that statute limits the amount of damages which can be held to be nondischargeable under § 523(a)(6) of the Bankruptcy Code to those actually created by such injury to the debtor as is both willful and malicious. Thus, the state court, in imposing liability for a simple tort, used a less restrictive standard. This appears to be so with respect to punitive, as well as actual, damages when the state law standard, as pointed out above, requires a lesser showing than that of "willful and malicious," which is required under the federal standard. Under such circumstances, this court has previously held that the bankruptcy court, in determining the magnitude as to which a claim is nondischargeable, is not bound by a prior state court determination. See *Matter of Kratzer*, 9 B.R. 235, 238, n. 1 (Bkrtcy.W.D.Mo.1981), employing the principle in a case in which the state court judgment was taken by default.

In assaying the evidence on the issue of damages, it can only be noted that it is fragmentary, incomplete and quite uncertain as to the amount of damages suffered by plaintiff. It appears, in fact, from the testimony of the plaintiff, that his medical and hospital bills have been paid by the City of Joplin,[7] and that the city has recovered only an uncertain and undeterminate amount by means of payroll deductions. From the portion of the evidence in this regard which can be considered as reasonably certain, it appears that plaintiff lost the sum of $400.00 in wages because of the necessity of his being hospitalized after the assault. Also, he has paid the sum of $1,000.00 on his own account for expenses caused by the assault.[8] And, in such a case as this, the court is warranted in awarding damages for pain and suffering.[9] The evidence is clear and uncontradicted that plaintiff suffered pain as a result of the assault to the extent that he lost consciousness and that he continued to suffer such for some period of time thereafter, at least through the time of his hospitalization subsequent to the accident.[10] Taking these elements into consideration, this court concludes that actual damages of $5,000.00 have been proven to be nondischargeable in bankruptcy as having been caused by the defendant's willful and malicious injury to the person of the plaintiff. The evidence adduced to the bankruptcy court further demonstrates that, while punitive damages are justified,[11] they must also be adjusted so that the judgment therefor "should not be altogether disproportionate to the amount of actual damages returned." *Lyons v. St. Joseph Belt Ry. Co.*, 232 Mo.App. 575, 84 S.W.2d 933, 946 (1935). In that case, it was further stated as follows on the subject of punitive damages:

" '[A] hard and fast rule for the measuring of such damages cannot be declared. Each case turns more or less upon its

7. As noted above, this was the plaintiff's testimony and it was further to the effect that he had as yet signed no agreement to recompense the city government. The court, under such circumstances, can hardly base an award of damages upon his willingness to volunteer to repay the city.

8. The court takes this evidence to establish that the amount paid was not such as was the subject of reimbursement of plaintiff by the city government. See note 7, *supra.*

9. In determining the damages for injuries such as those in the action at bar, the trier of fact, should "take into consideration the mental and physical pain and suffering endured by him since said injuries and in consequence thereof, if any, and whether they are temporary or permanent, and find for him in such sum as ...

under all the facts and circumstances in evidence will be a fair and reasonable compensation to him for whatever injuries and disabilities he has sustained." *See v. Kelly*, 363 S.W.2d 213, 217 (Mo.App.1962). It is neither necessary nor permissible that such damages be determined according to a mathematical formula. *Goldstein v. Fendelman*, 336 S.W.2d 661, 667 (Mo. 1960). Ordinarily, these damages must be determined by the trier of fact even though they may be difficult to quantify with any degree of certainty. *Flanigan v. Burlington Northern, Inc.*, 632 F.2d 880, 886 (8th Cir.1980).

10. And see note 9, *supra.*

11. See note 4, *supra.*

own peculiar facts. The character and standing of the parties, the malice with which the act was done, and the financial condition of the defendant are elements which should be taken into consideration in awarding damages of this character ... and the amount may be such as would by way of punishment·and example serve to deter the occurrence of like acts in the future.' "

In applying those principles, this court finds that, under all the circumstances of the case, the appropriate amount of punitive damages is the sum of $6,500.00.

It is therefore, in accordance with the foregoing findings of fact and conclusions of law,

ORDERED, ADJUDGED, AND DECREED that defendant's liability to plaintiff to the extent of $11,500.00 be, and it is hereby, declared to be nondischargeable in bankruptcy. It is further

ADJUDGED that plaintiff have and recover the same sum from defendant.